IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS CLINTON,

Plaintiff,

No. CIV S-05-1600 LKK CMK P

vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

Defendants.

FINDINGS & RECOMMENDATIONS

_______________________________/

Plaintiff is a former state prisoner proceeding without counsel in this civil rights action against various employees of the California Department of Corrections and Rehabilitation (CDCR). This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302(b)(21) on a motion to dismiss filed by defendants Arbini, Barnes, Barrientos, Cooper, Deforest, Desantis, Dixon, Hickman, Marshall, Mullin, Pomazal, Prosper, Rice, Riley, Sherer, Tripp, Wilson, and Woodford.[1] Fed. R. Civ. P 12(b).

///

[1]The court also directed service by the United States Marshal service on defendant Myers; however, it does not appear that defendant Myers was ever served as no waiver was executed and the summons for defendant Myer has not been returned unexecuted.

I. Background

At all times relevant to the events described in this complaint, plaintiff was an inmate at California Correctional Center (CCC) in Susanville, California. Plaintiff alleges that he was sexually assaulted by another inmate on November 24, 2004. He states that he reported the assault. After the assault, plaintiff was removed from CCC and placed in administrative segregation for his own protection. Plaintiff states that a confidential memorandum containing details of the assault was released into the general prison population, further endangering his safety and further necessitating housing in administrative segregation. Plaintiff was later transferred to the California Mens Colony in San Luis Obispo.

Plaintiff alleges that he was denied medical care after the alleged assault and alleges that he was retaliated against for reporting the assault. He claims that correctional staff should have allowed him to continue to receive two-for-one credits even after being removed from his prison job. He claims that the denial of these credits resulted in him being incarcerated nine months longer than he otherwise would have been.

II. Discussion

Defendants Arbini, Barnes, Barrientos, Cooper, Deforest, Desantis, Dixon, Hickman, Marshall, Mullin, Pomazal, Prosper, Rice, Riley, Sherer, Tripp, Wilson, and Woodford move for dismissal of this action on the grounds that plaintiff has failed to exhaust his administrative remedies as to some of the causes of action in his complaint and because plaintiff fails to state a cognizable claim against defendants Sherer, Tripp, Mullin, Prosper, Mashall, Arbini, Wilson, Barrientos, Deforest, Woodford, and Hickman.

A. Exhaustion Of Administrative Remedies

By the Prison Litigation Reform Act of 1995 ("PLRA"), enacted on April 26, 1996, Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The exhaustion of prison administrative procedures is mandated "regardless of the relief offered through [such] procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see also, Woodford v. Ngo, __U.S.___, 126 S.Ct. 2378 (2006). In order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules and that partial compliance is not enough. See Woodford, ___U.S. at__, 126 S.Ct. at 2385-88. The United States Supreme Court has cautioned that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Booth at 741 n.6. The Court has also ruled that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). An individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA, and the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. See Jones v. Bock, __ U.S.__, 127 S.Ct. 910 (2007).

In California, the state regulations that govern grievance procedures in state jails and prisons provide that inmates "may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). An administrative appeal may progress from an informal review through three formal levels of review. See Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may summarily deny a prisoner's untimely administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c). To comply with the PLRA exhaustion requirement, a state prisoner in California must file an inmate appeal on

each claim concerning prison conditions or events and must proceed to the highest level of administrative review available to him before he seeks judicial relief, regardless of the relief desired by the prisoner. A court is required to dismiss , without prejudice, an action involving prison conditions where the prisoner failed to exhaust administrative remedies prior to filing suit, even if he was in the process of doing so when the suit was filed. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

The Ninth Circuit has long held, and the Supreme Court of the United States has recently stated, that lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants. See Jones v. Bock, __ U.S.__, 127 S.Ct. 910 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1117 n.9 & 1119 n.13 (9th Cir. Jan. 2, 2003).

Here, defendants assert that plaintiff has failed to exhaust his administrative remedies with respect to his second, third, fifth, seventh, eighth, ninth, thirteenth, fourteenth, sixteenth, seventeenth, twenty-fifth, and twenty-sixth causes of action.

Plaintiff's second cause of action alleges that defendant DeSantis prevented him from receiving medical care by failing to inform medical personnel that plaintiff had alleged he was the victim of a sexual assault. Defendants have presented evidence that plaintiff never filed an administrative appeal regarding this issue.

Plaintiff's third cause of action alleges that defendant Barnes denied him adequate medical care by falsifying a CDCR 7219 form and not summoning a doctor to perform a rape examination. Defendants have presented evidence that plaintiff never filed an administrative appeal regarding this issue.

Plaintiff's fifth cause of action is that defendant Riley denied him medical care by failing to ensure that plaintiff received medical attention despite knowing that plaintiff required such. Defendants have presented evidence that plaintiff never filed an administrative appeal regarding this issue.

Plaintiff's seventh cause of action alleges that defendant Mullin denied him

medical care and endorsed defendant Tripp's retaliatory action. Those include a denial of plaintiff's two-for-one credits and denial of heat or protection from cold in his cell. Defendants have presented evidence that plaintiff never filed an administrative appeal regarding this issue.

Plaintiff's eighth cause of action alleges that defendant Dixon retaliated against him by refusing to allow him to move to a warmer cell, deliberately leaving a door open to allow cold air into plaintiff's cell, deliberately generating inaccurate documentation about the alleged rape, publicizing the alleged rape, and not preserving evidence of the rape. Defendants have presented evidence showing that plaintiff has failed to exhaust his administrative remedies on this issue.

Plaintiff's ninth cause of action alleges, among other things, that defendant Prosper retaliated against plaintiff by refusing to summon medical care for him. Defendants have presented evidence showing that plaintiff has failed to exhaust his administrative remedies on this issue.

Plaintiff's thirteenth cause of action alleges that defendant Cooper withheld plaintiff's legal materials. Plaintiff claims to have filed a grievance regarding this issue, however defendants have shown that there is no record of this appeal being filed or exhausted. Plaintiff also alleges that defendant Cooper refused to comply with a doctor's order to give plaintiff an extra blanket and tennis shoes. Defendants have presented evidence that plaintiff never filed an administrative grievance regarding the blanket or tennis shoes.

Plaintiff's fourteenth cause of action alleges that defendant Rice retaliated against plaintiff by depriving him of pain killer, denying him thermal clothing as protection against the cold, denying him a thicker mattress, and refusing to investigate the whereabouts of his x-rays. Defendants have presented evidence that plaintiff never filed an administrative grievance regarding these issues.

Plaintiff's sixteenth cause of action states that defendant Pomazal retaliated against him by depriving him of pain killers, denying him thermal clothing as protection against the cold,

denying him a thicker mattress, and refusing to investigate the whereabouts of his x-rays. Defendants have provided evidence that plaintiff never filed an administrative grievance regarding these issues.

Plaintiff's seventeenth cause of action asserts that defendant DeForest retaliated against him by writing a false CDCR form 1030 to discredit plaintiff, not giving him notice of an adverse action at his February 2, 2005 classification hearing, and not informing medical personnel that plaintiff needed medical attention. Plaintiff claims that defendant DeForest's actions were motivated by bias against plaintiff due to his sexual orientation. Defendants have presented evidence showing that plaintiff did not file an administrative grievance regarding this issue.

Plaintiff's twenty-fifth cause of action alleges that defendants Woodford and Hickman retaliated against him by ignoring communications from him indicating that he was being retaliated against by other correctional personnel. Defendants have provided evidence which shows that plaintiff did not exhaust his administrative grievances regarding that issue.

Defendants have proved that plaintiff did not exhaust his administrative remedies as to the above listed claims by providing a declaration from the Correctional Case Records Administrator, Marilyn Ouye and from the Inmate Appeals Coordinator at California Mens Colony, D. Engler. (Doc. 60, Attch 1&2.) <u>See</u> <u>Jones</u>, __ U.S. at __, 127 S.Ct. 910; <u>Wyatt</u>, 315 F.3d at 1117 n.9 & 1119 n.13. Defendants have also provided a copy of plaintiff's filed prison grievances. (Doc. 60, Attchs. 2 & 3.)

In his opposition to defendants' motion to dismiss plaintiff argues that "[CDCR] staff deliberately did not allow plaintiff his administrative grievance system..." (Opp'n (Doc. 62-1) at *2.) Plaintiff concedes that the PLRA is a "needed tool to provide prisoners the right to appeal adverse actions." However, he objects to the Supreme Court's holding in <u>Ngo</u>, which requires prisoners to properly exhaust all administrative remedies prior to filing suit. (Doc. 62-1 at * 2-3.) He points out that while <u>Ngo</u> requires prisoners to comply with the PLRA, the case's holding does not address the times when prison staff fail to follow their own regulations and

deliberately sabotage a prisoner's appeals process. Plaintiff also argues that he "cannot be held accountable for not knowing his rights" and that it was up to prison officials to inform plaintiff of his rights and/or provide him with appeals forms if he did not know his rights or have such forms. (Doc. 62-1 at * 9-10, 15.)

The court is sympathetic to plaintiff's arguments, however, the Supreme Court was very clear in Ngo about what proper exhaustion means. In Ngo, the respondent, who was an incarcerated prisoner, argued that §1997e(a) meant "that a prisoner may not bring suit in federal court until administrative remedies were no longer available." Ngo, 126 S.Ct. at 2384. Petitioners, the state of California, argued that a prisoner "must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. The Supreme Court stated that respondent's interpretation of §1997e(a) would make the PLRA exhaustion requirements "wholly ineffective." Id. at 2388. The Court concluded that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." Id.

To comply with the PLRA exhaustion requirement, a state prisoner in California must file an inmate appeal on each claim concerning prison conditions or events and must proceed to the highest level of administrative review available to him before he seeks judicial relief, regardless of the relief desired by the prisoner. See Cal. Code Regs. tit. 15, § 3084.1(a). In other words, a critical procedural rule in California's state prison grievance system is the filing of an inmate appeal.

Here, defendants have met their burden of showing that plaintiff failed to file an administrative grievance with respect to his second, third, fifth, seventh, eighth, ninth, thirteenth, fourteenth, sixteenth, seventeenth, twenty-fifth, and twenty-sixth causes of action. A review of plaintiff's central file reveals that plaintiff did not file any grievances which contained facts

relating to the above listed causes of action.  (Doc. 60, Attach. 3.)  Instead, most of plaintiff's grievances concern his two-for-one credits.  This court is bound by the Supreme Court's decision in Ngo, to dismiss claims which were not properly exhausted in the prison grievance system.  Additionally, the court is not persuaded by plaintiff's arguments that prison staff prevented him from exhausting his administrative remedies because they did not advise plaintiff that he could file a grievance and because staff did not provide him with grievance forms.

The court finds that plaintiff has not exhausted his administrative remedies, as required under the PLRA, with respect to his second, third, fifth, seventh, eighth, ninth, thirteenth, fourteenth, sixteenth, seventeenth, twenty-fifth, and twenty-sixth causes of action.  Accordingly, the court recommends that these causes of action be dismissed.

B. Failure To State A Claim

II. Standard of Review

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true and must construe them in the light most favorable to the plaintiff.  See Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); see also Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.

1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

Finally, leave to amend a deficient complaint must be granted ". . . [u]nless it is absolutely clear that no amendment can cure the defects." See Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

In the instant action, plaintiff alleges that defendants Sherer, Tripp, Mullin, Prosper, Marshall, Arbini, Wilson, Barrientos, Woodford, and Hickman violated his civil rights by not giving him the two-for-one credits he had been earning before the alleged sexual assault of November 24, 2004. Worktime credits are governed by California Penal Code section 2933. Subdivision (b) of that section states "[w]orktime credit is a privilege, not a right." It also states that worktime credits must be earned. The Ninth Circuit has held that section 2933 does not create a liberty interest in worktime credits that is cognizable under the Due Process Clause. See Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986). In light of Toussaint, the court finds that plaintiff has no due process right to his two-for-one credits. Because plaintiff has no due process rights to his good time credits, his complaint amounts to a criticism of the manner in which state officials have applied state law. Under the Eleventh Amendment, the federal courts have no jurisdiction to hear such claims. See Pennhurst State School & Hospital v. Halderman, 456 U.S. 89, 117 (1984).

Accordingly, the court finds that plaintiff fails to state a cause of action for deprivation of his two-for-one credits.

In plaintiff's first cause of action, he alleges that his rights were violated when Defendant Sherer allegedly ordered him to sign a chrono stating that he and another inmate were not enemies, threatening to remove plaintiff from camp if he did not do so. Plaintiff signed the chrono, but alleges he was removed from camp and retaliated against anyway. However, nowhere in the complaint does plaintiff allege that defendant Sherer removed him from the camp or retaliated against him, nor does he allege that the allegedly false chrono was relied upon by other staff members in deciding whether to remove plaintiff from camp.

A plaintiff must connect the named defendants clearly with the claimed denial of his rights. Farmer v. Brennan, 511 U.S. 825, 837, 843 (1994) (official's liability for deliberate indifference to assault requires that official know of and disregard an "excessive risk"); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("liability under section 1983 arises only upon a showing of personal participation by the defendant (citation omitted) . . . [t]here is no respondeat superior liability under section 1983."); Johnson v. Duffy, 588 F.3d 740, 743-44 (9th Cir. 1978) (discussing "requisite causal connection" in section 1983 cases between named defendant and claimed injury); Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").

Here, the court cannot determine what role, if any, defendant Sherer played in the alleged deprivation of plaintiff's rights. Accordingly, the court recommends that plaintiff's first cause of action be dismissed for failure to state a claim.

Plaintiff's seventeenth cause of action states that defendant DeForest violated his due process rights by not giving him prior notice of an adverse action by February 2 classification; however, plaintiff does not specify the nature of the adverse action, nor does he allege the invasion of a liberty interest. To the extent that plaintiff is challenging a classification, he fails to state a cognizable claim. An inmate does not have a constitutional right to any particular classification. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hernandez v. Johnston,

833 F.2d 1316, 1318 (9th Cir. 1987). Alleged deprivations of rights arising from prison officials' housing and classification decisions do not give rise to a federal constitutional claim encompassed by the Fourteenth Amendment. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Accordingly, the court finds that plaintiff's seventeenth cause of action regarding his February 2 classification fails to state a claim upon which relief can be granted.

Plaintiff's ninth cause of action alleges that defendant Prosper retaliated against him by falsifying the date on an administrative appeal log and falsely stating in her decision of that appeal that she had throughly reviewed the matter. Generally, the falsification of disciplinary reports or documents will not state a claim under the civil rights act if the inmate receives a hearing and is able to challenge the reports. See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir.2002). However, if the falsification interferes with the hearing process itself, the use of such documents may state a claim under the civil rights act. See Id. at 653-54 n. 10. A review of plaintiff's ninth cause of action reveals that he alleges that defendant Prosper violated his civil rights by allegedly falsifying the date that a 602 appeal was returned to plaintiff because he, and his central file, were transferred. Accordingly, there is no indication that the alleged falsification interfered with the appeals process, and the court finds that plaintiff fails to state a claim upon which relief can be granted.

To the extent that plaintiff argues that defendant Prosper failed to throughly review his appeal, he fails to state a claim upon which relief can be granted. The Ninth Circuit has stated that inmates have no legitimate claim of entitlement to a prison grievance procedure. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that:

1. The motion to dismiss (doc. 60) filed by defendants Arbini, Barnes, Barrientos, Cooper, Deforest, Desantis, Dixon, Hickman, Marshall, Mullin, Pomazal, Prosper, Rice, Riley, Sherer, Tripp, Wilson, and Woodford be granted for failure to exhaust administrative remedies

and for failure to state a claim upon which relief can be granted.

2. This action be dismissed in its entirety as to the above mentioned defendants only.[2]

3. This action shall proceed as to the causes of action against defendant Myers.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 7, 2007.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

[2]Other causes of action in plaintiff's complaint were dismissed during the screening process for failure to state a claim. (Docs. 36 & 49).