**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS CLINTON, | No. CIV S-05-1600-LKK-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| CALIFORNIA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

Plaintiff, a former state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment (Doc. 422). Plaintiff filed an opposition to the motion (Doc. 478), and defendants filed a reply thereto. In addition, plaintiff has filed several additional motions, some of which will be addressed herein.

**I. BACKGROUND**

**A.    Plaintiff's Allegations**

This case proceeds on plaintiff's third amended complaint (Doc. 35) against four remaining defendants: DeSantis, Cooper, Riley and Marshall. All other defendants have been

1

dismissed from this action.  This action stems from the defendants' treatment of plaintiff following his accusation that he had been raped by another inmate while cleaning the bathrooms at Trinity River Conservation Camp (TRCC).  Following this incident, plaintiff was transferred to the California Correctional Center in Susanville (CCC).

Upon screening, the court limited plaintiff's complaint to a number of claims "insofar as plaintiff alleges that he was denied adequate medical care following his rape or for his toenail fungus and/or that he was retaliated against for reporting a prison rape." (Order, Doc. 36, at 7).  This screening order was affirmed by the District Court.  (Order, Doc. 49).  Defendants then filed a motion to dismiss several of the claims for plaintiff's failure to exhaust his administrative remedies, and for failure to state a claim.  The undersigned recommended the motion be granted.  (Findings & Recommendations, Doc. 67).  The District Court adopted the recommendations in part, granting the motion to dismiss as to several claims, but denying the motion as to claims 2, 5, and 13.  (Order, Doc. 84).  Therefore, the claims against the four remaining defendants are as follows, but limited to the extent that plaintiff claims he was denied adequate medical care and/or was retaliated against in relation to his reporting a rape:

<u>DeSantis</u>: Plaintiff alleges defendant DeSantis allowed a confidential memorandum regarding the alleged rape to be released to the general prison population[1] and failed to request medical personnel perform a rape kit.

<u>Cooper</u>: Plaintiff alleges defendant Cooper failed to return his personal property[2] in a timely manner, and failed to honor a medical chrono regarding plaintiff's need for tennis shoes and an extra blanket.

---

[1]  To the extent plaintiff alleges defendant DeSantis may have released the report, that claim has not been authorized.

[2]  The court did not find plaintiff stated a claim in regards to the return of plaintiff's personal property.

1      <u>Riley</u>: Plaintiff alleges defendant Riley falsified documents[3] and failed to summon
2  medical care.
3      <u>Marshall</u>: Plaintiff alleges defendant Marshall allowed retaliation.
4  **B.     Defendant's Evidence**
5      In support of the motion, defendants have submitted plaintiff's deposition,
6  declarations from each defendant, some of plaintiff's medical records, and various documents
7  from plaintiff's prison central file.
8  **C.     Plaintiff's Evidence**
9      In support of his opposition, plaintiff submits several declarations and exhibits
10  including medical records, diary entries, and various reports from his prison central file.
11  **D.     Undisputed Facts**
12      Defendants submit a statement of undisputed facts, many of which plaintiff takes
13  issue with. However, as discussed more fully below, there are not many facts necessary to
14  address the current motion, nor are many documents actually used in the disposition of the
15  motion.
16      From various filings, the undersigned has determined the following statement to
17  be undisputed. On or about November 24, 2004, plaintiff was housed at Trinity River
18  Conservation Camp (TRCC). On or about November 24, 2004, plaintiff alleges he was sexually
19  assaulted by another inmate.[4] This incident was reported to the officials at TRCC. Both plaintiff
20  and the other inmate were then transferred to California Correctional Center (CCC). Upon his
21  arrival at CCC, plaintiff was taken to the medical clinic where he was medically cleared for
22  administrative segregation where he was placed in protective custody pending the investigation.

---

[3]  The court did not find plaintiff stated a claim as to the falsification of any documents alleged, except perhaps to the extent such action was in retaliation which is not alleged.

[4]  Although the court has no reason to doubt to plaintiff's allegations of rape, the veracity of the allegation is not an issue in this case and the court need not address it.

1  On November 27, 2013, plaintiff was interviewed by defendant DeSantis and reported that he
2  had been raped.  Defendant DeSantis did not talk with medical staff as to why plaintiff was there,
3  or what plaintiff's medical condition or issues were.

## II. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

1  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630
2  (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury
3  could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,
4  1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more
5  than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the
6  record taken as a whole could not lead a rational trier of fact to find for the non-moving party,
7  there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is
8  sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the
9  parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

10  In resolving the summary judgment motion, the court examines the pleadings,
11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
12  any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see
13  Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed
14  before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.
15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
16  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
18  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for
19  the judge, not whether there is literally no evidence, but whether there is any upon which a jury
20  could properly proceed to find a verdict for the party producing it, upon whom the onus of proof
21  is imposed."  Anderson, 477 U.S. at 251.

### III.  DISCUSSION

23  In the motion for summary judgment, defendants argue there is no evidence to
24  support plaintiff's claims, and plaintiff failed to exhaust his administrative remedies as to
25  defendants Riley and Marshall.  Plaintiff contends the lack of evidence is in part due to the
26  defendants destroying evidence.  In addition, plaintiff spends a lot of time explaining to the court

how poorly he was treated throughout the incident and thereafter. While the court is sympathetic to plaintiff's struggles following such a traumatic event, the remaining claims are very limited, and not specifically related to the actual rape. Therefore, unfortunately, many of plaintiff's arguments are irrelevant to the motion pending before the court. To the extent the court does not address each argument plaintiff sets forth, the intention is not to ignore plaintiff's plight, but to address only that which is relevant to the issues before the court. Similarly, plaintiff's filings in response to the motion are voluminous. Again, the court will only address those which are relevant to the pending issues.

Both sides object to the evidence each other has submitted to the court in support of their position on this motion. The undersigned has reviewed the documents, and has found most of the evidence submitted to be irrelevant to the claims remaining in this case.

**A.    Denial of Medical Treatment After Assault (Defendants DeSantis and Riley)**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

1   Deliberate indifference to a prisoner's serious illness or injury, or risks of serious
2 injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at
3 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental
4 health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is
5 sufficiently serious if the failure to treat a prisoner's condition could result in further significant
6 injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d
7 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).
8 Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition
9 is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily
10 activities; and (3) whether the condition is chronic and accompanied by substantial pain. See
11 Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

12   The requirement of deliberate indifference is less stringent in medical needs cases
13 than in other Eighth Amendment contexts because the responsibility to provide inmates with
14 medical care does not generally conflict with competing penological concerns. See McGuckin,
15 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to
16 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
17 1989).  The complete denial of medical attention may constitute deliberate indifference.  See
18 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical
19 treatment, or interference with medical treatment, may also constitute deliberate indifference.
20 See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also
21 demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

22   Negligence in diagnosing or treating a medical condition does not, however, give
23 rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a
24 difference of opinion between the prisoner and medical providers concerning the appropriate
25 course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,
26 90 F.3d 330, 332 (9th Cir. 1996).

1	Plaintiff's first general claim remaining in this case is that defendants DeSantis
2	and Riley denied him appropriate medical treatment.  Specifically, he claims defendant DeSantis
3	failed to properly alert medical as to the potential need for a rape kit and examination to be
4	performed, and defendant Riley knew plaintiff was in need of medical care and failed to summon
5	medical on plaintiff's behalf.
6	As set forth above, in November 2004, plaintiff was housed at TRCC.  On or
7	about November 24, 2004, plaintiff alleges he was sexually assaulted by another inmate. This
8	incident was reported to the officials at TRCC. Both inmates were transferred to CCC, where
9	plaintiff was placed into protective custody pending the investigation.  On November 27, 2004,
10	plaintiff was interviewed by defendant DeSantis and reported that he had been raped.
11	Plaintiff first had contact with defendant Riley on or about December 16, 2004.
12	Defendant Riley did not summon medical care for plaintiff in relation to the possible rape which
13	occurred November 24, 2004, three weeks earlier.
14	There is no dispute as to whether or not plaintiff was taken through medical at
15	CCC.  There is also no dispute that defendant DeSantis did not inform medical as to the reason
16	plaintiff was there.  However, defendant DeSantis is part of the correctional staff, not the medical
17	staff.  Plaintiff argues defendant DeSantis had an affirmative duty to inform medical as to the
18	situation, especially because plaintiff did not feel comfortable doing so given the other prisoners
19	in the vicinity. Plaintiff does not, however, argue that defendant DeSantis somehow deliberately
20	interfered with his ability to seek treatment.  Plaintiff offers limited if any evidence to support his
21	contention that defendant DeSantis had a duty to inform medical as to plaintiff's possible
22	condition.  Even if defendant DeSantis had such a duty, and was negligent in not so informing
23	medical, that is insufficient to rise to the level of an Eighth Amendment violation.  In order to
24	have violated plaintiff's Eighth Amendment rights, defendant DeSantis would have had to
25	somehow actually interfered with or refused plaintiff medical treatment such as refusing to take
26	him to medical after learning about the possible rape.  Plaintiff does not claim such deliberate

interference. His claim rests on his contention that defendant DeSantis had a duty to so inform medical. Defendant DeSantis acknowledges in his declaration that plaintiff informed him about the possible rape, and that he then had plaintiff transported to the medical clinic. Plaintiff does not dispute this. While he argues he was unable to inform medical as to his condition due to the lack of privacy and confidentiality, there is no argument or evidence that defendant DeSantis deliberately and knowingly interfered with plaintiff's ability to receive medical treatment. Therefore, there is no evidence that defendant DeSantis was deliberately indifferent to plaintiff's medical needs.

Next, plaintiff argues defendant Riley failed to summon medical care after finding out about the potential rape three weeks after the fact, thus interfering with his ability to have evidence of the assault collected. Defendant Riley has submitted a declaration wherein he states he was aware of the possible assault, but was not aware as to what medical treatment, if any, plaintiff had already received. Plaintiff argues that defendant Riley was aware of his need for treatment based on a facial cut, and therefore violated his Eighth Amendment rights by not taking affirmative action in summoning medical. Plaintiff does not, however, argue or provide any evidence that defendant Riley affirmatively interfered with plaintiff's ability to seek medical treatment. Again, defendant Riley was a correctional officer, not part of the medical staff. Plaintiff does not allege that he requested defendant Riley's assistance in obtaining medical care, but rather seems to indicate that defendant Riley had an affirmative duty to plaintiff to assist him in seeking medical care without request. However, even if the defendant had a duty pursuant to state law or prison regulations, negligence in fulfilling that duty is insufficient to rise to the level of an Eighth Amendment violation. There is no evidence before the court that defendant actively sought to keep plaintiff from obtaining medical care with the knowledge that plaintiff had a serious medical need which so required. Defendant Riley has submitted a declaration that he did not have such knowledge. Plaintiff's attempts to discredit defendant Riley are insufficient to overcome this evidence. Plaintiff fails to submit evidence to the contrary, with the exception of

his arguments pertaining to the spoliation of documents, as discussed more fully below. However, even within that argument, there is no specific document or other evidence plaintiff points the court to in order to overcome defendant Riley's declaration, or otherwise provide evidence to show defendant Riley acted with deliberate indifference to a known serious medical need. This is especially true given the time frame involved here, that plaintiff's first contact with defendant Riley was three weeks after the alleged assault.

Indeed, the defendants have submitted a body chart that indicates plaintiff was seen in the medical center on November 24, 2004, at CCC. While it is apparent the body chart was used, as plaintiff argues, as a clearance for placement in administrative segregation, it is also evidence that plaintiff was in the medical clinic and could have requested medical assistance from the appropriate medical providers. The court understands plaintiff's hesitation to discuss the sexual assault in a non-confidential location. However, it stands to reason that plaintiff could have requested a private examination while he was in the medical clinic. Either way, the undisputed evidence before the court shows plaintiff was taken to the medical clinic after the alleged sexual assault, and none of the defendants prevented plaintiff from requesting or obtaining medical treatment.

**B.      Medical Chrono for Tennis Shoes and Blanket**

Plaintiff's next claim is that defendant Cooper refused to comply with a medical chrono for an extra blanket and tennis shoes. It is unclear to the undersigned whether this claim relates to an Eighth Amendment violation for failure to provide necessary medical care, or defendant Cooper refused to provide necessary medical items in retaliation to plaintiff's reporting of his prison rape.

To the extent this is a medical claim, the standard for such a claim is the same as set forth above. To the extent this is a relation claim, in order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological

1  purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16
2  (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific
3  link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v.
4  Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-
5  39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was
6  chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v.
7  Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th
8  Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for
9  retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was
10 taken because the inmate engaged in protected conduct; (3) the adverse action chilled the
11 inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate
12 penological purpose.  See Rhodes, 408 F.3d at 568.

13       As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not
14 alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm
15 that is more than minimal will almost always have a chilling effect."  Id. at n.11.  By way of
16 example, the court cited Pratt in which a retaliation claim had been decided without discussing
17 chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to
18 discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate
19 penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly
20 stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse
21 action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also
22 Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action
23 which is more than minimal satisfies this element.  Thus, if this reading of Rhodes is correct, the
24 chilling effect element is essentially subsumed by adverse action.

25       Here, defendant Cooper provides the court with a declaration essentially stating he
26 has no recollection of these events, but had no reason to retaliate against plaintiff, and would

only have denied him these items if plaintiff had been unable to produce his medical chrono or prison policy did not allow it.  Plaintiff counters with a copy of a document wherein defendant Cooper apparently acknowledged plaintiff's chrono.  (Doc. 478-14, at 55).

The burden in a motion for summary judgment originally lies with the moving party.  Only once the moving party produces evidence that shows no disputable facts as to each claim does the burden shift to the non-moving party.  The undersigned finds Defendant Cooper fails to meet his burden.  A declaration indicating a lack of memory as to the specific claims is insufficient to show there is no disputable facts.  Similarly, his argument that plaintiff cannot prove his case is insufficient.  Before that argument can pass muster, he must meet his burden to show there are not disputable facts warranting trial.  A faulty memory, and the veracity of the testimony as to such, is an issue for a jury to determine.  The undersigned therefore finds defendant Cooper has not met his burden to show there is no genuine issue as to how or why plaintiff's medical chonos were not complied with.

Defendant Cooper also argues he is entitled to qualified immunity.  However, this argument fails for the same reason.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

Here, defendant Cooper argues that it is not unlawful for an officer to insist on seeing a chrono before such is honored. While the undersigned may agree with that assertion, that does not answer the question before the court. Plaintiff has submitted a document wherein defendant Cooper apparently acknowledged plaintiff's chrono. (Doc. 478-14, at 55). Thus, it is not a question of whether plaintiff had the chrono, but what defendant Cooper did when he was provided the chrono and why. Based on defendant Cooper's argument,, the undersigned does not find qualified immunity applicable.

C.     **Retaliation by Warden Marshall**

Plaintiff's final claim is that warden Marshall retaliated against him by altering his release date and not personally responding to his mother's grievances. Plaintiff argues that he was punished in retaliation for reporting the prison rape by having his release date changed, by being transferred to California Men's Colony (CMC), and being housed with sex offenders. He claims defendant Marshall was made aware of the situation through the inmate grievances he filed and the letters his mother sent. Defendant Marshall submits a declaration wherein he states it is the normal practice for a subordinate administrator to address correspondence from inmate's relatives, that he was not aware of plaintiff's issues either through the letters or his administrative appeals, and he took no adverse action against plaintiff.

Plaintiff does not allege, much less provide any evidence, that defendant Marshall was personally involved in the decisions which he complains of. There is no allegation that defendant Marshall had any control over plaintiff's classification and release date. Nor does plaintiff provide any evidence to counter defendant Marshall's declaration that he was unaware of plaintiff's situation and that he took no action against plaintiff. Rather, plaintiff's claim is

more equivalent to that of a respondeat superior claim, that defendant should be held responsible for the actions of his subordinates because of his position as warden.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948.

Therefore, to the extent plaintiff claims defendant Marshall is liable for the actions of others based on his position as warden, that claim fails as a matter of law. Similarly, to the extent plaintiff argues a violation of his constitutional rights for defendant Marshall's failure to properly respond to his grievances, such a claim would also fail as a matter of law. Prisoners have no stand-alone due process rights related to the administrative grievance process.

See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. However, that exception is not present in the current action.

Finally, to the extent plaintiff argues defendant Marshall violated his rights by failing to properly calculate his credits and therefore his release date, such a claim also must fail as a matter of law. First, plaintiff offers no argument to support defendant Marshall's personal liability for such action. There is no allegation that defendant Marshall was actually the one personally responsible for calculating plaintiff's credits. Regardless of that issue, however, plaintiff's claim that he was denied proper credits is a claim that sounds in habeas.

When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ

of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam).  Thus, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, or the result of a prison disciplinary hearing resulting in imposition of a sanction affecting the overall length of confinement, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding.  See Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 claim not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (concluding that § 1983 claim not cognizable because allegations of procedural defects were an attempt to challenge substantive result in parole hearing); cf. Neal, 131 F.3d at 824 (concluding that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and not to any particular parole determination); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005) (concluding that § 1983 action seeking changes in procedures for determining when an inmate is eligible for parole consideration not barred because changed procedures would hasten future parole consideration and not affect any earlier parole determination under the prior procedures).

Thus, to the extent plaintiff challenges his credit calculation and overall length of confinement, such a claim fails in a § 1983 case as a matter of law, unless he was able to have the credit determination overturned though a habeas action first.  Plaintiff acknowledges he was unsuccessful in his habeas challenge to his credit calculation.  Therefore, his claim here must also fail.

D.     **Spoliation and other Motions**

Most of plaintiff's argument in opposition to the motion for summary judgment relates to his continual claim that the records from his central file have been destroyed or

modified, thus not allowing him the ability to prove his case. Generally, the documents plaintiff complains about would have no effect on the outcome of this motion. Specifically, given the discussions above, even if plaintiff is correct that the documents in his central file are inaccurate, none of the claims herein are dependent on any such document. Defendants DeSantis and Riley are entitled to summary judgment because plaintiff acknowledges that he was sent to the medical clinic after his transfer to CCC, and to the extent they may have been negligent in fulfilling some duty to make certain plaintiff received medical care such a claim fails to meet the requirements of an Eighth Amendment violation. Defendant Marshall is entitled to summary judgment because the claims against him fail as a matter of law. No documents from plaintiff's central file are necessary for these claims to be addressed.

To the extent the claims against defendant Cooper will require documents at trial, such issues can be addressed by the parties in appropriate pre-trial motions, such as motions in limine.

To the extent plaintiff claims all of the defendants' declarations should be stricken as false and perjured, there is no proof of any such perjury. Similarly, plaintiff requests the court not allow his deposition to be used against him as he was mentally unstable at the time it was taken, as he so informed defense counsel. Again, plaintiff's deposition was not material to the discussion above. However, the undersigned notes that plaintiff has not specifically claimed which parts of his deposition are inaccurate, but rather requests the entire deposition be stricken. The undersigned finds no adequate basis for striking the deposition, declarations, or issuing terminating sanctions due to spoliation.

The undersigned is sympathetic to plaintiff's frustration. His frustration however, has the tendency to cloud the issues. Plaintiff spends much time and effort trying to find inconsistencies with the documents in his central file. He points to paper clip copies, illegible or non-existent date stamps, and differences in the quality of the copies as evidence of the destruction and/or modification of documents. These inconsistencies are explainable by

differences in copy machines and the like, and fail to show that the documents have in fact been modified. Plaintiff's filings are probably very clear to him, but his arguments generally consist of vague, generalized allegations, the suggestion of a conspiracy by staff, but he fails to point to specific examples for the court to follow. The undersigned has read plaintiff's filings liberally, but find none of his arguments can withstand even minimal scrutiny. For example, plaintiff's argument that defendant Riley admits someone forged his signature on a report is inaccurate. While defendant Riley states he did not sign the document, he does not argue as plaintiff appears to, that someone forged his signature. Rather, he simply states he did not author, review or approve the document, and that the handwriting on the documents is not his. This does not support plaintiff's contention that the statements are perjured. Thus, the undersigned finds no basis for granting plaintiff's numerous motions to strike defendants' filings, sanction the defendants, or investigate the defendants.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 422) be granted in part and denied in part;

2. Defendants' motion should be granted as to defendants DeSantis, Riley, and Marshall;

3. Defendants' motion should be denied as to defendant Cooper;

4. Plaintiff's motions for sanctions and miscellaneous relief based on defendants' alleged dishonesty be denied; and

5. This action continue as to defendant Cooper only as to plaintiff's claim that defendant Cooper failed to honor his medical chronos for an extra blanket and tennis shoes.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written

objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 18, 2013

                                                                                     /s/ Craig M. Kellison
                                                                     **CRAIG M. KELLISON**
                                                                     UNITED STATES MAGISTRATE JUDGE